ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona
GAYLE L. HELART
Assistant U.S. Attorney
California State Bar No. 151861
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: gayle.helart@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR-18-08121-PCT-GMS |
|---|---|
| Plaintiff, | |
| vs. | **PLEA AGREEMENT** |
| Kyle Shane Hogan, | |
| Defendant. | |

Plaintiff, United States of America, and the defendant, Kyle Shane Hogan, hereby agree to dispose of this matter on the following terms and conditions:

PLEA

The defendant will plead guilty to Count 1 of the Indictment charging him with Interstate Communications Containing a Threat, in violation of 18 U.S.C. § 875(c), a Class D felony offense.

MAXIMUM PENALTIES

- A violation of 18 U.S.C. §§ 875(c) is punishable by a maximum term of imprisonment of up to 5 years, a maximum fine of $250,000, or both, and a term of

1

supervised release of a ~~minimum~~ *maximum* of 3 years. The defendant may be sentenced to probation pursuant to 18 U.S.C. § 3561 because the offense is a Class D felony.

- According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

  - make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

  - pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

  - serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed; and

  - pay upon conviction a $100 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013.

- The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime of conviction, unless there are stipulations to the contrary that the Court accepts.

AGREEMENTS REGARDING SENTENCING

- **Stipulation:** Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the defendant's sentence will be between a sentence of time served up to 16 months. Further, the parties stipulate that the case will be calculated under U.S.S.G. § 2A6.1. The parties will argue whether the offense involved more than two threats pursuant to U.S.S.G. § 2A6.1(b)(2). Specifically, the government will argue that the two-level enhancement should be applied; the defendant will argue that the enhancement does not apply because the offense did not involve more than two threats.

- **Restitution.** Pursuant to 18 U.S.C. §3663 and/or 3663A, the defendant

specifically agrees to pay full restitution, but in no event, no more than $50,000, to all victims directly or proximately harmed by the defendant's "relevant conduct," including conduct pertaining to any dismissed counts or uncharged conduct, as defined by U.S.S.G. § 1B1.3, regardless of whether such conduct constitutes an "offense" under 18 U.S.C. §§ 2259, 3663, or 3663A. The defendant understands that such restitution will be included in the Court's Order of Judgment and that an unanticipated restitution amount will not serve as grounds to withdraw the defendant's guilty plea or to withdraw from this plea agreement.

- **Assets and Financial Responsibility.** The defendant shall make a full accounting of all assets in which the defendant has any legal or equitable interest. The defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or transfer any such assets or property before sentencing, without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures). The defendant also expressly authorizes the United States Attorney's Office to immediately obtain a credit report as to the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. The defendant also shall make full disclosure of all current and projected assets to the U.S. Probation Office immediately and prior to the termination of the defendant's supervised release or probation, such disclosures to be shared with the U.S. Attorney's Office, including the Financial Litigation Unit, for any purpose. Finally, the defendant shall participate in the Inmate Financial Responsibility Program to fulfill all financial obligations due and owing under this agreement and the law.

- **Acceptance of Responsibility.** If the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of responsibility for this offense up to and including the time of

3

sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a). If the defendant has an offense level of 16 or more, the United States will move for an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

AGREEMENT TO DISMISS OR NOT TO PROSECUTE

- The United States shall dismiss Counts 2 - 6 of the Indictment at the time of sentencing. The United States agrees not to bring any further charges as a result of this investigation. The parties stipulate that the Court may take into account all of the facts of the investigation, including the facts that support Counts 2-6 of the Indictment.

- This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION

- If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

- If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings. The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used against the

defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

WAIVER OF DEFENSES AND APPEAL RIGHTS

- The defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c). This waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

- **<u>DISCLOSURE OF INFORMATION</u>**

    - The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

    - Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

    - The defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to

5

questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

- criminal convictions, history of drug abuse, and mental illness;

and

- financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS

- Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

ELEMENTS

- **Interstate Communications Containing Threat**
- On or about September 4, 2017, in the in the District of Arizona, and elsewhere,
- The defendant knowingly transmitted in interstate commerce a voicemail message containing a threat to injure L.F.
- Such voicemail message was transmitted for the purpose of issuing a threat or with knowledge that the voicemail message would be

viewed as a threat.

- The government need not prove that the defendant intended to carry out the threat.

FACTUAL BASIS

- The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

- On September 4, 2017, in the District of Arizona and elsewhere (here, Tennessee), the defendant transmitted 5 successive voicemail messages containing a threat to injure L.F. At the time, L.F. was a professor at a Northern Arizona University in Flagstaff, Arizona and the defendant lived in Tennessee. The voicemail messages were transmitted with the purpose of issuing a threat to injure L.F. and family members of L.F., or with knowledge that L.F. would view the voicemail messages as a threat.

- The defendant was familiar with L.F. because he had spoken to him by telephone relating to the defendant being admitted as a student. That did not ultimately happen.

- Specifically, as to Count 1, the defendant's voicemail message was placed to L.F.'s office voicemail at Northern Arizona University. The message lasted for approximately 4 minutes, 28 seconds. The defendant's statements included:

- <u>Why don't you go out and organize, (L.F.)? Go out, get in Antifa. We already know you'll get involved. They got people at the university that studied under you. I want you to organize and take it to the streets, brother, so we can bust your fucking head on national television. So we can bust your fucking spic head on national television with all the little fucking spics around you. La Raza. La Raza. Remember that. La Raza.</u>
- <u>........</u>
- <u>Somebody needs to slap the fucking taste out of your mouth, because you're a pussy, and you won't take it to the streets. You won't fucking put in the</u>

7

- <u>elbow grease like you're writing about in your books, "Mr. I'm a Revolutionary. I'm an anarchist. I'm going to be a radical." Take it to the streets, (L.F.). Keep organizing, brother. Take your bitch-ass friends up in San Francisco and California, mother fucker, and take it to the streets, because you're going to end up in jail or dead.</u>
- 
- <u>And when I finish law school in another year, I'm going to finish finding your family, your cousins, uncles, sisters, nephews, all the people you have out in California. Let me tell you what, mother fucker. You better best believe none of them will be involved with the law. Any kind of child custody suit, alimony, any of your fucking relatives run afoul of the law, I'm going to fucking litigate and fuck your whole bloodline in the ass, all the way up and down California, all up and down that seaboard, because that's where I'm practicing law at. I'm going out there to fucking hunt down you mother fuckers and make your life hell.</u>

- The other four telephone calls relayed similar content, with some reciting L.F.'s family members' names and residence locations, and each voicemail message containing a threat to injure L.F. or L.F.'s family members. The length of the voicemail messages are set forth in the Indictment.

- On May 14, 2018, the defendant was interviewed regarding the telephone calls. The defendant stated he was in Tennessee when he made the calls to L.F. He had used the mobile application called "Pinger" to make the calls via a cellular telephone number to conceal his true telephone number. The defendant admitted the telephone messages were aggressive and he recalled one in which he stated he would "shoot him in the street." The defendant stated he left several messages in succession because he was angry and the voicemails kept cutting him off. The defendant stated he had researched L.F. and L.F.'s family members' information though an application that searched background information of individuals. The defendant stated he never had an intention to hurt or stalk L.F. The defendant agreed L.F. had never threatened him.
- 
    - The defendant shall swear under oath to the accuracy of this statement

and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

- **APPROVAL AND ACCEPTANCE OF THE DEFENDANT**
  - I have read the entire plea agreement with the assistance of my attorney. I understand each of its provisions and I voluntarily agree to it.
  - I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.
  - I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.
  - I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.
  - My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.
  - I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release

may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

- This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

- I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

- I am satisfied that my defense attorney has represented me in a competent manner.

- I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

10/29/18
Date

Kyle Shane Hogan
Defendant

- **APPROVAL OF DEFENSE COUNSEL**
- I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R.

Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to

- make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

10/29/18
Date

John Rood, III
Attorney for Defendant

- **APPROVAL OF THE UNITED STATES**

- I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

10/29/18
Date

Gayle L. Helart
Assistant U.S. Attorney

11

## ACCEPTANCE BY THE COURT

_____          _____
Date                                                           Honorable G. MURRAY SNOW
                                                                     United States District Judge